# EXHIBIT
# "A"

DocuSign Envelope ID: FAAD3C2F-4809-4403-A99D-3CE984E4B9AC

*Execution Version*

# RESTRICTIVE COVENANT AGREEMENT

This Restrictive Covenant Agreement (this "Agreement") is made as of July 1, 2024 by and between Beacon Sales Acquisition, Inc., a Delaware corporation ("Purchaser"), and Paul Filipe ("Owner").

## RECITALS

A. Pursuant to that certain Asset Purchase Agreement, dated as of the date hereof (the "Purchase Agreement"), by and among (a) Purchaser, (b) Extreme Metal Fabricators, LLC, a Florida limited liability company ("Seller"), and (c) Owner, as the sole member of Seller, Purchaser is acquiring substantially all of the operating assets of the Business (as defined below), including but not limited to goodwill, trade secrets and non-public confidential Business information, of Seller.

B. Owner will receive an immediate direct and indirect benefit on the closing date from the consummation of the transactions contemplated by the Purchase Agreement ("Closing Date"), including the receipt of significant monetary proceeds as a direct result of such transactions. Therefore, Owner will receive substantial benefits as a result of the transactions contemplated by the Purchase Agreement.

C. Seller is engaged in business as a manufacturer and supplier of metal panel roofing systems and custom sheet metal fabrications for commercial, residential, agricultural and industrial applications, which includes fabricating and/or supplying metal roofing panels and trims and structural components, as well as related metal roofing fasteners, accessories, tools and other products (the "Business").

D. Owner has knowledge of trade secrets and other non-public confidential Business information regarding Seller and the Business that, following the consummation of the transactions contemplated by the Purchase Agreement, will be proprietary to Purchaser, highly sensitive, and constitute valuable assets being acquired by Purchaser together with the goodwill of the Business pursuant to the Purchase Agreement and the instruments executed and delivered in connection therewith.

E. Purchaser would not have entered into the Purchase Agreement and would not have consummated the transactions contemplated thereby without entering into this Agreement with Owner whereby the entry of this Agreement is a specific requirement to consummating the transaction pursuant to the Purchase Agreement.

## AGREEMENTS

Therefore, for good, valuable and significant consideration the Owner is receiving as described in the Recitals as a direct result of the transactions as contemplated by the Purchase Agreement, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

1. Adoption of Recitals. The parties hereto adopt the foregoing Recitals and agree and affirm that construction of this Agreement shall be guided thereby.

DocuSign Envelope ID: FAAD3C2F-4809-4403-A99D-3CE984E4B9AC

2. Definitions. Capitalized terms used but otherwise not defined herein shall have the meaning ascribed to such terms in the Purchase Agreement. The following terms shall have the meanings herein specified:

(a) "Affiliate" of any Person means another Person that directly or indirectly, through one or more intermediaries, controls, is controlled by, or is under common control with, such first Person. As used herein, "control" means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a Person, whether through the ownership of voting securities or equity interests, by contract or otherwise. In the case of Owner, an Affiliate shall, for the avoidance of doubt, include Seller and also any member of the Family Group of Owner.

(b) "Business Associate" means any employee, contractor, subcontractor, representative, consultant or agent of the Seller and the Business or Purchaser or any of their Affiliates, including those who have acted in such capacity at any time within the twelve (12) months immediately preceding the date of hire, recruitment, solicitation, or retention, as applicable. Notwithstanding the foregoing, neither Joseph Keene nor Darius Moura shall be considered a Business Associate following the termination of the respected party's employment with the Purchaser, subject to the terms and conditions each such party's employment agreement with Purchaser.

(a) "Competing Products" means (i) any product or service, in existence or under development, which is of the same type as, which competes with, or which is intended to compete with or displace in the market, any of the products or services provided or sold (or contemplated to be provided or sold) by Seller or the Business immediately prior to the Closing Date, and (ii) any of the following products or any service related to the following products: (A) residential and commercial roofing, including but not limited to shingles (all types including but not limited to asphalt, wood, and synthetic), built-up, modified, EPDM, TPO/PVC and low-slope commercial, (B) siding, (C) windows, (D) skylights, (E) doors, (F) decking and railings, (G) waterproofing products and materials, including sealants, fillers, coatings and adhesives marketed to the waterproofing industry, (H) fiberglass, cellulose, spray foam, mineral wool and other insulation products, (I) asphalt (but not including asphalt related to roads and paving), (J) roof coatings and adhesives specially designed for and marketed to the roofing contractor industry, (K) metal roofing, (L) plywood, (M) millwork, (N) synthetic stone, (O) lumber, (P) moldings, (Q) barriers and barrier systems including firestopping systems and devices, (R) drainage materials, (S) gutters and gutter coils, and (T) tools, equipment and other accessories used in (A) through (S) above.

(b) "Confidential Information" means information regarding the Seller, the Business or Purchaser Group that has not been disclosed by duly authorized agents of the Seller or Owner prior to the Closing Date or Purchaser to the public and is not known to the general public, and which shall include, but

not be limited to, the following with respect to the Seller, the Business or Purchaser Group: (i) information regarding operations, assets, liabilities or financial condition; (ii) information regarding bidding, quotations, price, sales, merchandising, marketing and promotions (including marketing strategies and concepts), advertising campaigns, capital expenditures, costs, joint ventures, business alliances, products, services or purchasing; (iii) information regarding the terms, conditions and employment relationship Purchaser or the Business has (or previously had when involving the Business when conducted by the Seller) with employees, including non-public information regarding their monetary compensation, benefits and employee personnel files; (iv) information regarding the terms, conditions and relationship Purchaser or the Business has (or previously had when involving the Business when conducted by the Seller) with Business Associates (other than employees), including their identities, responsibilities, qualifications, benefits, compensation and files; (v) customer lists, databases and other information related to current or prospective customers, including information regarding their identities, contact persons and purchasing patterns; (vi) information regarding current or prospective vendors, suppliers, distributors or other business partners; (vii) forecasts, projections, budgets and business plans; (viii) information regarding planned or pending acquisitions, divestitures or other business combinations; (ix) technical information, models, know-how, protocols, discoveries, techniques, processes, business methods, trade secrets and proprietary information; and (x) contemplated website designs, website content, domain names, data bases, internet hyperlinks, internet banners and internet search engine listings. Notwithstanding the foregoing, Confidential Information shall be treated as such under this Agreement unless and until it becomes generally known to the public through no act or fault of Owner, is independently developed without reference to the Confidential Information or is disclosed by someone who is not in breach of any duty of confidentiality. Confidential Information shall not include any information that (i) has been published by the Purchaser Group (other than a disclosure by Employee in breach of this Agreement) in a form generally available to the public or (ii) or otherwise enters the public domain through lawful means. Additionally, as relates to Metal Alliance (as defined below) Confidential Information shall not include information pertaining to the products sold by Metal Alliance or logistics and industry standards present in the commercial metal industry which are also utilized in Metal Alliance's day to day business operations, provided, however, any such information that is specific to Purchaser Group's operation of the Business and/or the assets being purchased pursuant to the Purchase Agreement shall nevertheless constitute Confidential Information.

(c) "Customer" means any Person who is a customer of the Purchaser Group during the Restriction Period or has been a customer of the Seller and the Business or the Purchaser Group or any Affiliate or predecessor of the Seller that owned or conducted the Business or the Purchaser Group at any time within the twelve (12) months immediately preceding the date hereof.

(d) To "engage" in a business means (i) to render services in (or with respect to) the Territory for that business, or (ii) to own, manage, operate or control (or participate in the ownership, management, operation or control of) an enterprise engaged in that business in (or with respect to) the Territory.

(e) "Family Group" means an individual's spouse and descendants (whether natural or adopted), siblings, parents, any custodians of a custodianship for and on behalf of one or more such individuals or such individuals' relatives and any trustees of a trust solely for the benefit of one or more such individuals.

(f) "Person" means any individual, trustee, firm, corporation, partnership, limited liability company, joint venture, bank, government entity, trust or other organization or entity.

(g) "Purchaser Group" means Purchaser and its parent company(ies) and other Affiliates.

(h) "Restriction Period" means the shorter of (i) the period from the Closing Date until the seventh (7th) anniversary of the Closing Date or (ii) the longest time permitted by applicable law if seven (7) years is not permitted.

(i) "Solicit" means to encourage or induce, or to take any action that is intended or calculated to encourage or induce, which has the effect of encouraging or inducing, or which is reasonably likely to result in encouragement or inducement.

(j) "Territory" means the means the United States of America; except that if a court or arbitrator finds that the United States of America as a Territory is not reasonably necessary to protect legitimate business interests of Purchaser, then the parties agree that the Territory shall be the States of Florida, Alabama, Mississippi, Louisiana, South Carolina and Georgia.

3. Inducement; Additional Consideration. As an inducement for Purchaser to enter into the Purchase Agreement, Owner agrees to the covenants and restrictions contained herein. Owner acknowledges and agrees that as an owner of the Seller, Owner has had contact with, and Confidential Information about, all customers of the Seller, the Business and all Business Associates, in each case as of the date of this Agreement.

4. Restrictive Covenants. Except with respect to the limited exceptions provided by Section 5 of this Agreement, Owner agrees that, from and after the date hereof and continuing through the Restriction Period, Owner shall not, and shall cause the Seller and its other Affiliates to not, do any one or more of the following, directly or indirectly (collectively, the "Restrictive Covenants"):

(a) engage, participate or prepare to engage or participate, anywhere in the Territory, as an owner, partner, member, shareholder, independent contractor, employee, consultant, agent, lender, lessor, advisor or (without

DocuSign Envelope ID: FAAD3C2F-4809-4403-A99D-3CE984E4B9AC

limitation by the specific enumeration of the foregoing) otherwise in the Business;

(b) Solicit, attempt to Solicit, or assist anyone else to Solicit, any Person who is or has been a Customer to (i) cease doing business with any member of the Purchaser Group, (ii) alter, interfere with, disrupt or limit its business relationship with any member of the Purchaser Group, or (iii) purchase, other than from a member of the Purchaser Group, any Competing Products;

(c) Solicit, attempt to Solicit, or assist anyone else to Solicit, any Person who is or has been a supplier, contractor, subcontractor, dealer, distributor, licensor, licensee, lessor or any other business relation of the Seller, the Business, the Purchaser Group or any Affiliate or predecessor of the Seller that owned or conducted the Business or the Purchaser Group at any time within the twelve (12) months immediately preceding the date hereof to (i) cease doing business with any member of the Purchaser Group or (ii) alter, interfere with, disrupt or limit its business relationship with any member of the Purchaser Group;

(d) market, promote, sell, offer to sell, or provide any Competing Products to any Customer, or prepare to or assist anyone else to do so;

(e) Solicit, attempt to Solicit, or assist anyone else to Solicit any Business Associate to terminate, restrict, interfere with or hinder his, her or its association with any member of the Purchaser Group; or

(f) recruit, interview, Solicit, hire or otherwise retain the services of any Business Associate, whether on a full-time basis, part-time basis or otherwise in violation of any non-competition or restrictive covenant agreement in place between the Business Associate and Purchaser Group and whether as an employee, officer, director, independent contractor, consultant, advisor, agent or in another capacity, or assist anyone else to do so, in each case if such action would restrict, interfere with or terminate such Business Associate's activities for and on behalf of any member of the Purchaser Group. For the purposes of this sub-paragraph (f), to restrict or interfere with a Business Associate's activities shall mean to substantially impair or impede the Business Associate's ability to carry out the job duties prescribed by Purchaser Group to the Business Associate, including the ability of the Business Associate to meet any minimal hourly requirements for work on a yearly cumulative basis set forth by Purchaser Group for the Business Associate.

5. Limited Exceptions. Purchaser and Owner mutually acknowledge Owner's pre-existing business relationship with and ownership of Integrity Metals Vero Beach, LLC, a Florida limited liability company, together with its subsidiaries and affiliates (collectively, "Vero Beach") and Metal Alliance Holdings, LLC, a Florida limited liability company, together with its subsidiaries and affiliates (collectively, "Metal Alliance"). Vero Beach is a real estate holding company, in the business of

DocuSign Envelope ID: FAAD3C2F-4809-4403-A99D-3CE984E4B9AC

owning and operating real estate (the "Vero Beach Business"). Metal Alliance is in the business of distributing raw material metal products used in the metal roofing industry, including the Business, and its products include metal coil, metal sheets and other raw metal products (the "Metal Alliance Business"). Purchaser and the Owner agree to the following limited exceptions to the Restrictive Covenants, as set forth below:

(a) Owner's ownership interest in Vero Beach is acknowledged and his ongoing ownership interest in Vero Beach (as an owner, partner, member, shareholder, independent contractor, employee, consultant, agent, lender, lessor, advisor or (without limitation by the specific enumeration of the foregoing)) shall not be deemed to be a breach of the Restrictive Covenants, provided that Vero Beach does not change or alter the Vero Beach Business, either directly or indirectly, in a manner that will result in any such change being an activity within the scope of the Business; and

(b) Owner's ownership interest in Metal Alliance is acknowledged and his ongoing ownership interest in Metal Alliance (as an owner, partner, member, shareholder, independent contractor, employee, consultant, agent, lender, lessor, advisor or (without limitation by the specific enumeration of the foregoing)) shall not be deemed to be a breach of the Restrictive Covenants, provided that Metal Alliance does not change or alter the Metal Alliance Business, either directly or indirectly, in a manner that will result in any such change being an activity within the scope of the Business.

6. Protection of Confidential Information.

(a) Owner agrees that, during the Restriction Period: (i) Owner shall (and shall cause the Seller and Owner's and Seller's respective Affiliates to) maintain all Confidential Information in strict confidence, (ii) Owner shall not (and shall cause the Seller and Owner's and the Seller's respective Affiliates not to), directly or indirectly, disclose any Confidential Information to anyone outside of the Purchaser Group, and (iii) Owner shall not (and shall cause the Seller and Owner's and Seller's respective Affiliates not to), directly or indirectly, use any Confidential Information for either Owner's or Seller's benefit or the benefit of any third party.

(b) Notwithstanding the foregoing, if any given item(s) of Confidential Information would be entitled to protection against misappropriation, use, disclosure or other conduct for a period of time longer than the Restriction Period under any applicable trade secrets statute or other applicable law, then the protections hereunder shall, as to such item(s) of Confidential Information, extend for such longer period of time pursuant to applicable law, and the foregoing provisions shall not be deemed in any way to reduce, limit or waive any such protections that may be applicable to such Confidential Information under applicable law.

(c) Nothing in this Agreement, however, shall prohibit any Person from using or disclosing Confidential Information to the extent required by law or as reasonably required in connection with a dispute concerning the terms of this Agreement. If Owner, the Seller or any of their respective Affiliates is required by law to disclose any Confidential Information, then Owner shall (i) provide Purchaser with prompt notice before such disclosure in order that Purchaser may attempt to obtain a protective order or other assurance that confidential treatment will be accorded such information and (ii) cooperate with Purchaser in attempting to obtain such order or assurance. Nothing herein shall prohibit any Person from using or disclosing any Confidential Information while employed by any member of the Purchaser Group (or otherwise retained to provide services for any member of the Purchaser Group) in furtherance of their duties to Purchaser Group.

7. Non-Disparagement. Owner shall not, and shall cause the Seller to not, directly or indirectly, make (or cause to be made) to any Person any disparaging, derogatory or other negative or false statement about any member of the Purchaser Group (including its products, services, policies, practices, operations, employees, sales representatives, agents, officers, members, managers, partners or directors). Purchaser shall not, directly or indirectly, make (or cause to be made) to any Person any disparaging, derogatory or other negative or false statement about the Owner. Notwithstanding the foregoing, no party shall be responsible for any disparaging, derogatory or other negative or false statement about the other party by: (i) former employees, officers, directors, or board members of that party or, with respect to Purchaser, any other entity in the Purchaser Group; or (ii) with respect to Purchaser only, current employees who are not executive officers, directors or board members of Purchaser or any other entity in the Purchaser Group. Nothing in this Section 7 is intended to or shall prevent, impede or interfere with the parties providing truthful testimony and information in the course of an investigation or proceeding authorized by law and conducted by a governmental agency.

8. Non-Endorsement. During the Restriction Period, Owner shall not, and shall cause the Seller to not, directly or indirectly, make (or cause to be made) to any Person any endorsement or other commercially supportive statement about any Person (other than the Purchaser Group) engaged in whole or in part in the Business (including any such Person's products, services, equipment, suppliers, policies, practices, operations, employees, sales representatives, independent contractors, licensees, advisors, agents, officers, directors, shareholders, members, managers, partners, subsidiaries or other Affiliates), including any endorsement or statement made in support of a Competing Product.

9. Passive Investments. Nothing contained in this Agreement shall restrict Owner from, directly or indirectly, owning, as a passive investment, two percent (2%) or less of the equity securities of any Person in competition with a member of the Purchaser Group, which securities are listed on any national securities exchange, as long as Owner has no other business relationship, direct or indirect, with the issuer of such securities.

10. Scope of Covenants. Owner is entering into this Agreement in connection with the transactions contemplated by the Purchase Agreement, and Owner hereby acknowledges and agrees that the foregoing covenants and the territorial, time and activity limitations set forth herein are commercially reasonable to Owner, the Seller and their Affiliates and are properly required to protect Purchaser, its Affiliates and their respective businesses, and to accord them the benefit of their bargain. If any such territorial, time or activity limitation is determined to be unreasonable by a court or other tribunal, the parties agree to the modification and/or reduction of such territorial, time or activity limitations (including the imposition of such a limitation if it is missing) to such an area, period or scope of activity as said court or tribunal shall deem reasonable under the circumstances. Also, if Purchaser seeks partial enforcement of Sections 4, 5, 7 and 8 as to a lesser territory, time or scope of activity, then Purchaser shall be entitled to such reasonable partial enforcement if the lesser territory, time or scope is approved through court order by a court of competent jurisdiction. If such reduction or (if Purchaser seeks partial enforcement) such partial enforcement is not possible, then the unenforceable provision or portion thereof shall be severed as provided in Section 11.

11. Severability. Subject to Section 10, if any provision of this Agreement or portion thereof is determined by a court or other tribunal to be wholly or partially unenforceable in any jurisdiction, then (for purposes of such jurisdiction) such provision or portion thereof shall be struck from the remainder of this Agreement, which shall remain in full force and effect. Without limitation of the foregoing: (a) any one or more of clauses (a), (b), (c), (d), (e) or (f) of Section 4 may be so severed from the remainder of this Agreement; (b) any one or more of Sections 4, 5, 7 or 8 may be so severed from the remainder of this Agreement; (c) the Territory shall be construed as if each state therein and each county within each such state were listed in a separate clause which may be so severed; and (d) the Restriction Period shall be construed as if each month therein were listed in a separate clause which may be so severed. In the event Owner, the Seller or any of their respective Affiliates violates any obligation contained in this Agreement, the time period provided for with respect to such obligation shall be tolled (i.e., shall not run) as to Owner for so long as he/she is in breach thereof.

12. Remedies. The remedies of each party hereunder shall be cumulative and concurrent, and may be pursued singularly, successively, or together, in such party's sole discretion. Owner agrees that any violation of Sections 4, 5, 7 or 8 would cause irreparable harm to Purchaser and its Affiliates. Without limitation of the generality of the foregoing, if Owner, the Seller or any of their respective Affiliates violates any provision of Sections 4, 5, 7 or 8, then Purchaser shall be entitled, in addition to any other remedies that it may have, to specific performance, injunctive or other equitable relief (without the requirement of posting of a bond or other security) in order to enforce such provision.

13. Notices. Any notice to be given or delivered pursuant to this Agreement shall be ineffective unless given or delivered in writing as follows:

(a) If to Purchaser, to:

Beacon Sales Acquisition, Inc.
505 Huntmar Park Drive, Suite 300
Herndon, Virginia 20170
Email: christine.reddy@becn.com
Attention: Christine Reddy

(b) If to Owner:

Paul Filipe
4156 SW Moore St.
Palm City, Florida 34990
Email: pdfilipe@gmail.com

With a copy to:

Cauthen & Burns, P.A.
Attn: J Knox Burns IV
215 N. Joanna Avenue
Tavares, Florida 32778
Email: jknoxburns@cflegal.com

and/or in any case, to such other address for a party as to which notice shall have been given to Purchaser and Owner in accordance with this Section 13. All notices required or permitted to be given hereunder shall be in writing and may be delivered by hand, by nationally recognized private courier, by United States mail or by email or other electronic means. Notices delivered by mail shall be treated as given three (3) business days after being deposited in the United States mail, postage prepaid, registered or certified mail. Notices delivered by hand, by nationally recognized private carrier or by email or other electronic means shall be treated as given on the date of receipt; except that a notice delivered by email or other electronic means shall only be effective if such notice is also given by hand or by private carrier, or deposited in the United States mail, postage prepaid, registered or certified mail, on or before two (2) business days following its delivery by email or other electronic means.

14. Entire Agreement. This Agreement and the Purchase Agreement represent the entire understanding and agreement of the parties hereto with respect to the subject matter hereof, supersedes all prior negotiations between such parties, and cannot be amended, supplemented or changed orally but only as provided in Section 20 or by an agreement in writing signed by the party or parties against whom enforcement is sought and making specific reference to this Agreement or the Purchase Agreement, as applicable. This Agreement is expressly made and delivered pursuant to the Purchase Agreement. Nothing in this Agreement is intended to, nor shall it, change, amend, extend, supersede, modify, limit, alter or otherwise affect the terms, obligations, representations, warranties, covenants and agreements

DocuSign Envelope ID: FAAD3C2F-4809-4403-A99D-3CE984E4B9AC

contained in the Purchase Agreement, and such terms, obligations, representations, warranties, covenants and agreements shall remain in full force and effect in accordance with the terms of the Purchase Agreement. In the event of any conflict or other difference between the terms of the Purchase Agreement and this Agreement, the terms of the Purchase Agreement shall govern, supersede and prevail.

15. Waiver. Except as otherwise provided in this Agreement, any failure of any party to comply with any obligation, covenant, agreement or condition herein may be waived by the party entitled to the benefits thereof only by a written instrument signed by the party granting such waiver, but such waiver or failure to insist upon strict compliance with such obligation, covenant, agreement or condition will not operate as a waiver of, or estoppel with respect to, any subsequent or other failure.

16. Governing Law and Venue. The interpretation and construction of this Agreement, and all matters relating hereto, shall be governed by the laws of the State of Florida applicable to contracts made and to be performed entirely within the State of Florida without giving effect to any conflict of law provisions thereof. The parties to this Agreement submit to the exclusive jurisdiction of the Florida Courts and the United States District Court for the Middle District of Florida (and the appropriate appellate courts), in respect of the interpretation and enforcement of the provisions of this Agreement and any related agreement, certificate or other document delivered in connection herewith, and by this Agreement, waive, and agree not to assert, any defense in any action for the interpretation or enforcement of this Agreement and any related agreement, certificate or other document delivered in connection herewith, that they are not subject thereto or that such action may not be brought or is not maintainable in such courts or that this Agreement may not be enforced in or by such courts or that their property is exempt or immune from execution, that the action is brought in an inconvenient forum, or that the venue of the action is improper. Each party hereto waives personal service of any and all process upon it, and consents that all services of process be made by registered or certified mail, return receipt requested, directed to it at its address as set forth in Section 12, and service so made shall be treated as completed when received. Nothing in this Section 15 shall affect the right of the parties hereto to serve legal process in any other manner permitted by Law.

17. WAIVER OF JURY TRIAL. THE PARTIES HERETO HEREBY IRREVOCABLY WAIVE THEIR RESPECTIVE RIGHTS TO TRIAL BY JURY OF ANY CAUSE OF ACTION, CLAIM, COUNTERCLAIM OR CROSS-COMPLAINT IN ANY ACTION OR OTHER PROCEEDING BROUGHT BY ANY PARTY HERETO AGAINST ANY OTHER PARTY OR PARTIES HERETO WITH RESPECT TO ANY MATTER ARISING OUT OF, OR IN ANY WAY CONNECTED WITH OR RELATED TO, THIS AGREEMENT OR ANY PORTION THEREOF, WHETHER BASED UPON CONTRACTUAL, STATUTORY, TORTIOUS OR OTHER THEORIES OF LIABILITY. EACH PARTY REPRESENTS THAT IT HAS CONSULTED WITH COUNSEL REGARDING THE MEANING AND EFFECT OF THE FOREGOING WAIVER OF ITS RIGHT TO A JURY TRIAL. ANY PARTY HERETO MAY FILE AN

DocuSign Envelope ID: FAAD3C2F-4809-4403-A99D-3CE984E4B9AC

ORIGINAL COUNTERPART OR A COPY OF THIS SECTION 17 AS WRITTEN EVIDENCE OF THE CONSENT OF EACH SUCH PARTY TO THE WAIVER OF ITS RIGHT TO TRIAL BY JURY.

18. Binding Effect. This Agreement shall inure to the benefit of and be binding upon the parties hereto, and their successors and permitted assigns. Nothing in this Agreement, express or implied, is intended to confer on any Person other than the parties hereto, and their respective successors and permitted assigns any rights, remedies, obligations or liabilities under or by reason of this Agreement.

19. Assignment. This Agreement may not be transferred, assigned, pledged or hypothecated by any party without the prior written consent of the other party, except that Purchaser may assign all or a portion of its rights and obligations or delegate any of its duties under this Agreement, to (a) one or more Affiliates, (b) any subsequent purchaser of Purchaser or its Affiliates or substantially all of the assets of Purchaser or its Affiliates so long as such assignee assumes the obligations and liabilities of this Agreement, which Purchaser shall confirm by notice to Owner in writing and (c) any lender providing financing to Purchaser or any of its Affiliates and any such lender may exercise all of the rights and remedies of Purchaser hereunder; provided, however, that no such assignment shall relieve Purchaser of its obligations under this Agreement.

20. Amendments. This Agreement shall not be modified or amended except pursuant to an instrument in writing executed and delivered on behalf of each of the parties hereto.

21. Headings. The headings contained in this Agreement are for convenience of reference only and shall not affect in any way the meaning or interpretation of this Agreement.

22. Counterparts; Electronic Signatures. This Agreement may be executed and delivered in separate counterparts, each of which shall be deemed to be an original, and all of which taken together shall constitute one and the same agreement. Execution and delivery of this Agreement by electronic exchange bearing the copies of a party's signature shall constitute a valid and binding execution and delivery of this Agreement by such party. Such electronic copies shall constitute enforceable original documents.

23. Fees. In any dispute, litigation, or other proceeding to enforce the terms of this Agreement or arising out of this Agreement, the substantially prevailing party to such dispute, litigation, or other proceeding shall be reimbursed and indemnified by the not prevailing party for all costs and expenses, including reasonable attorneys' fees, incurred through all stages of litigation, all levels of appeals, and all settlement, enforcement and collection proceedings. The "prevailing party" is that party whose position is substantially upheld in the ultimate adjudication of the dispute, including any appeals.

DocuSign Envelope ID: FAAD3C2F-4809-4403-A99D-3CE984E4B9AC

24. Interpretation. The words "hereof" and "herein" and words of similar import will, unless otherwise stated, be construed to refer to this Agreement as a whole and not to any particular provision of this Agreement, and Section references are to the Sections of this Agreement unless otherwise specified. Whenever the words "include," "including" or similar expressions are used in this Agreement, they will be understood to be followed by the words "without limitation" or "but not limited to". The words describing the singular number will include the plural and vice versa, and words denoting any gender will include all genders. The parties have participated jointly in the negotiation and drafting of this Agreement. In the event of an ambiguity or question of intent or interpretation arises, this Agreement will be construed as if drafted jointly by the parties and no presumption or burden of proof will arise favoring or disfavoring any party by virtue of the authorship of any provisions of this Agreement.

*[Remainder of page intentionally left blank; signature page follows.]*

DocuSign Envelope ID: FAAD3C2F-4809-4403-A99D-3CE984E4B9AC

IN WITNESS WHEREOF, the parties have executed this Restrictive Covenant Agreement on the date first above written.

**PURCHASER**:

**BEACON SALES ACQUISITION, INC.**

DocuSigned by:

By: Munr Best
2A50EA07C15341C...

Name: C. Munroe Best III
Title: President, South Division

**OWNER:**

DocuSigned by:

Paul Filipe
3507E932C1D340E...

Paul Filipe, individually